IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

D'JUAN HUNTER,                          *

    Plaintiff,                        *

v.                                      *          Civil Action No. GLR-25-1023

BRADLEY O. BUTLER, et al.,              *

    Defendants.                       *
                        ***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Assistant Warden Bradley Butler; Lieutenant Mark Widmyer; Sergeants Sarah Hawkins and Brooke Mace; Correctional Officers Chelsea Reinhardt, Bradley McCue, Casey Araiza, Armand Smithberger, and Brandon Kerr; Hearing Officer Christopher Wedlock; Chaplain Jay Atkinson; and the "Maintenance Staff assigned to Housing Unit 4 of Sept. 4–5, 2023" (collectively, "Defendants")[1] Motion to Dismiss (ECF No. 24). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant Defendants' Motion.

---

[1] The Clerk will be directed to amend the docket to reflect Individual Defendants' full names and titles.

## I.   BACKGROUND

**A.   <u>Factual Background</u>[2]**

Self-represented Plaintiff D'Juan Hunter states that since filing a federal lawsuit in 2020 against the Department of Public Safety and Correctional Services ("DPSCS"), he has been subjected to retaliation at Western Correctional Institution ("WCI"). (Am. Compl. at 7, 9, ECF No. 14).[3] On September 3, 2023, Correctional Officers Reinhardt and McCue searched Hunter's cell. (<u>Id.</u> at 9). Reinhardt took bottles from the top of his locker and asked Hunter whether the oil they contained would "test positive" for anything, which Hunter denied. (<u>Id.</u>). Reinhardt returned to Hunter's cell after testing the oil, claiming it contained drugs. (<u>Id.</u>). According to Hunter, Reinhardt did not seal the oil bottle in a protective bag, but simply put it in her pocket. (<u>Id.</u> at 3). Hunter was moved to disciplinary segregation, where he states many other inmates had also received similar infractions for oils and cleaning supplies that tested positive for drugs. (<u>Id.</u> at 9). Hunter alleges that Sergeant Hawkins was responsible for administering the tests and validating the false positive result. (<u>Id.</u> at 3). He states that Hawkins neither tested the oil entering the prison nor the Chaplain's oil. (<u>Id.</u>). According to Hunter, Chaplain Atkinson is responsible for ordering religious oils. (<u>Id.</u> at 4). Because at least one of the bottles taken from Hunter's

---

[2] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 14) and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

[3] Unless otherwise noted, citations to the record refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

cell had been given to him by Atkinson, Hunter asserts that Atkinson is liable for having disbursed the drugs to him. (Id.).

On September 4, 2025, Hunter states that the water was turned off in his cell on the hottest day of the month. (Id. at 9). Maintenance workers restored the water for about fifteen minutes and then it was unavailable until 3:00 p.m. (Id.). According to Hunter, he was without water for twenty-four hours total. (Id. at 9–10). At some point during this period, Hunter alleges that his tier was pepper sprayed, causing him to choke on food and suffer from a dry cough for hours, permanently damaging his throat. (Id. at 13).

Hunter reported the issue to Correctional Officer Araiza but was ignored. (Id. at 5). Araiza also failed to provide Hunter with a grievance form upon his request. (Id.). Correctional Officers Kerr and Smithberger provided him with a bag of ice during their midnight shift but also failed to provide him with requested grievance forms. (Id. at 5, 10). Hunter "was unable to brush, wash, drink or perform cleansing prayer ritual" and states that he had to eat in his cell with urine and feces present. (Id. at 10).

Over the next couple of days, Hunter was questioned about the oils. (Id.). He alleges that Lieutenant Widmyer covered up the false positive by verifying the "reported facts" as an "agent," a title Hunter does not believe a shift supervisor can hold. (Id. at 4). During the disciplinary hearing on September 11, 2023, Hunter asserts that Hearing Officer Wedlock failed to question the Officers' findings and assumed Hunter's guilt, thus, depriving him of a fair and impartial hearing. (Id. at 5, 10). After the hearing, Hunter was found guilty and lost his job assignment as a welding aid and his "state pay," among other things. (Id. at 10). Later that evening, Hunter was moved to disciplinary segregation, during which he

injured his back while carrying his property down the steps. (Id. at 13; Pl.'s Opp'n Defs.' Mot. Dismiss ["Opp'n"] at 3–4, ECF No. 32).

Hunter was "disqualified" by the parole commission due to his drug infraction, even though he states that Defendants, specifically Hawkins, were aware of issues with the drug tests but did nothing in his case. (Am. Compl. at 3, 10–11, 16).[4] Hunter alleges that in early May 2025, he spoke to Sergeant Mace while returning from a video visit, and she admitted to him that "there was something wrong with the [drug] tests." (Id. at 3–4). Mace allegedly told Hunter that some tests could not be corroborated by outside laboratories. (Id. at 4). Hunter further alleges that Assistant Warden Butler allows a significant amount of drugs to come through WCI. (Id. at 5–6).

Hunter asserts that Butler denied his appeal and grievances. (Id. at 5–6). For relief, Hunter seeks back pay, return of good conduct time, and monetary damages. (Id. at 13).

**B.**     **Procedural History**

Hunter filed this case on March 27, 2025, under 42 U.S.C. § 1983. (ECF No. 1). On July 14, 2025, Hunter filed additional pleadings, which were docketed together as an Amended Complaint. (ECF No. 14). On October 14, 2025, Defendants filed a Motion to Dismiss. (ECF No. 24). Hunter filed an Opposition on December 8, 2025 (ECF No. 30), but because the filing was not signed, the Court issued a deficiency notice on December 9, 2025 (ECF No. 31). Hunter cured the deficiency and filed a signed copy of his Opposition

---

[4] According to Hunter, another inmate who received the same charge on the same day had his charges dismissed. (Am. Compl. at 11, ECF No. 14).

on December 19, 2025. (ECF No. 32). On March 26, 2026, Defendants filed their Reply. (ECF No. 37).

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual

allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Complaints drafted by self-represented plaintiffs are held to a less stringent standard than those drafted by attorneys, and courts must liberally construe these complaints. See Johnson v. Silvers, 742 F.2d 823, 825 (4th Cir. 1984); Harris v. Warden, No. CCB-20-1500, 2020 WL 7129339, at *2 (D.Md. Dec. 4, 2020). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.** **Analysis**

Defendants seek dismissal of the Amended Complaint, asserting that: (1) Defendants are entitled to immunity under the Eleventh Amendment and Maryland law; (2) Hunter fails to allege several Defendants' participation in a constitutional violation; (3) Hunter fails to state a condition or medical care claim under the Eighth Amendment; (4) Hunter fails to state free exercise, retaliation, or grievance claims under the First Amendment; (5) Hunter fails to state an equal protection claim under the Fourteenth Amendment; (6) Hunter fails to state a claim under the Maryland Declaration of Rights; and (7) Defendants are entitled to qualified immunity. (Mem. Supp. Defs.' Mot. Dismiss ["Mot. Dismiss"] at 8–27, ECF No. 24-1).

Defendants include many of these arguments to the extent the Court construes the Amended Complaint as raising certain claims. To avoid any unnecessary analysis, the Court states at the outset that liberally construing the Amended Complaint, Hunter raises a

6

First Amendment retaliation claim, an Eighth Amendment conditions of confinement claim, and a Fourteenth Amendment due process claim. Hunter confirms as much in his Opposition.[5] (Opp'n at 2–3, 8). As such, the Court need not address Defendants' arguments regarding failure to provide medical care, the Free Exercise Clause, the Equal Protection Clause, or the Maryland Declaration of Rights.

### 1.    Eleventh Amendment Immunity

Under the Eleventh Amendment of the United States Constitution, a State, its agencies, and its departments are immune from citizen suits in federal court absent State consent or Congressional action. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Claims against State employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the State actor is tantamount to a suit against the State itself. See Brandon v. Holt, 469 U.S. 464, 471–72 (1985). The State of Maryland has not waived such immunity for claims of constitutional violations brought under Section 1983. See Pevia v. Hogan, 443 F.Supp.3d 612, 631–32 (D.Md. 2020). Hunter asserts that an exception applies here because he seeks prospective injunctive relief. (Opp'n at 20). No such request appears in the Amended Complaint. (See

---

[5] Hunter also contends that Defendants violated his Fourth Amendment right to be free from unreasonable searches and that Chaplain Atkinson cancelled religious services during Ramadan (Mem. Opp'n. Defs.' Mot. Dismiss ["Opp'n"] at 9, 12, 31–33, ECF No. 32), but because Hunter does not assert these claims in his Amended Complaint they are not properly before the Court, Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) (noting that a plaintiff "is bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint"). Even if it was properly asserted, however, the Supreme Court has long held that this protection does not apply to prison cells because prisoners do not have any expectation of privacy in their prison cell. Hudson v. Palmer, 468 U.S. 517, 525–26 (1984).

generally Am. Comp.). Accordingly, to the extent Hunter sues Defendants in their official capacities, they are immune from suit, and the claims against them must be dismissed.

### 2. Personal Participation

Hunter fails to allege that several of the named Defendants personally participated in any violation of his constitutional rights. Liability under Section 1983 attaches only upon personal participation by a defendant in the constitutional violation. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Hunter alleges only that he had a conversation with Sergeant Mace about the efficacy of the drug testing at WCI. (Am. Compl. at 3–4). While he may believe her perceived failure to speak up about the faulty testing is negligent, Hunter does not assert any constitutional misconduct or that she was personally involved in the testing of his oils. (Id.). Moreover, a constitutional right violation requires proof of intentional, not negligent, conduct. See Dillard v. Ashraf, No. RDB-18-94, 2020 WL 2839099, at *3 (D.Md. June 1, 2020) ("[C]onstitutional rights are not violated by acts of negligence.").

Similarly, his allegations against Chaplain Atkinson are insufficient to find that Atkinson participated in a constitutional violation. Hunter states that Atkinson's oils were contaminated with drugs, which he then distributed to Hunter. (Am. Compl. at 4). No specific facts of how or when this occurred are provided, nor is it clear from the pleadings whether Atkinson was aware of any contamination. (See generally id.). These allegations are purely speculative and do not establish any plausible constitutional claim. As such, the Amended Complaint cannot proceed against either Sergeant Mace or Chaplain Atkinson.

Hunter also fails to state a claim for relief against Assistant Warden Butler. It is well established that the doctrine of respondeat superior does not apply in Section 1983 claims.

See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (explaining that there is no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)). Thus, supervisory liability under Section 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to, or tacit authorization of, the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

Hunter fails to plead facts establishing these elements. He asserts that Butler failed to conduct an unbiased investigation of his grievances and allowed drugs to enter WCI. (Am. Compl. at 5–6). These allegations are conclusory and do not establish any personal or supervisory liability by Butler. Specifically, the mere review of Hunter's grievances does not alone impose liability. See Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) (warden's "rubber-stamped" grievances were not enough to establish personal participation); see also Larson v. Meek, 240 F.App'x 777, 780 (10th Cir. 2007). In his Opposition, Hunter speculates that "[o]ther Defendants must have fabricated alternative

9

facts to misconstrue actual events." (Opp'n at 7). However, Hunter does not allege that Butler was aware of, authorized, or displayed indifference to any such misconduct. Thus, the Court must dismiss the Amended Complaint as to Butler.

### 3.    First Amendment

Hunter also asserts a Section 1983 claim against Defendants for alleged violations of his First Amendment rights. (Am. Compl. at 9). "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). To set forth a colorable First Amendment retaliation claim under Section 1983, a plaintiff must allege that: (1) the plaintiff "engaged in protected First Amendment activity; (2) the defendant[] took some action that adversely affected [plaintiff's] First Amendment rights; and (3) there was a causal relationship between [plaintiff's] protected activity and the defendant['s] conduct." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005), see also Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017). The crux of Hunter's Amended Complaint is that Defendants searched his cell in retaliation for his federal lawsuit against DPSCS. (Am. Compl. at 9). But Hunter pleads no facts that establish a causal connection between his filing a lawsuit and the search of his cell. Beyond stating that Butler was named in his prior lawsuits and holds a position of power at WCI, Hunter has not shown that this was anything more than a coincidence. (Opp'n at 5, 37). The retaliation claims rest solely on Hunter's conclusions of malicious intent and therefore must be dismissed.

10

To the extent Hunter also asserts that Defendants denied his access to the grievance process in retaliation for his federal lawsuit, this claim fails for the same reasons discussed above. Moreover, Hunter himself pleads that he eventually filed grievances, which Butler denied. (Am. Compl. at 5–6).

To be sure, "if an inmate exercises his First Amendment right when he files a prison grievance, retaliation against him for doing so is unconstitutional." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 540 (4th Cir. 2017); see also Bibbs v. Early, 541 F.3d 267, 272 (5th Cir. 2008) (recognizing First Amendment retaliation right); Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) (same); Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006) (same). While it remains true that prisoners do not have a constitutional entitlement to or liberty interest in accessing a grievance procedure, see Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), there remains a "First Amendment right [that] is violated when he is retaliated against for submitting a grievance pursuant to an existing grievance procedure," Booker, 855 F.3d at 541.

To make out a retaliation claim under Section 1983, a showing of adversity is essential. ACLU of Md., Inc. v. Wicomico Cnty. Md., 999 F.2d 780, 785 (4th Cir. 1993). "The plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The inmate must allege facts sufficient to show that the alleged act of retaliation had a chilling effect on his exercise of the right of access to the courts. ACLU of Md., 999 F.2d at 785. The retaliatory

actions must be likely to deter "'a person of ordinary firmness' from the exercise of First Amendment rights." Constantine, 411 F.3d at 500 (quoting Washington v. Cnty. Of Rockland, 373 F.3d 310, 320 (2d Cir. 2004) (Sotomayor, J.)).

Here, Hunter fails to demonstrate that any Defendants' refusal to provide him with a grievance form was even partially, if at all, motivated by his prior lawsuit. Nor has Hunter shown that the denial of his requests had a chilling effect, as Hunter later filed grievances. (Am. Compl. at 5–6). Therefore, on these facts, the Court finds that Hunter's Amended Complaint is insufficient to permit an inference of a First Amendment violation.

### 4.      Eighth Amendment

Hunter's allegations that he was without water for one day while being held in disciplinary segregation also are insufficient to state a plausible claim for relief. (Id. at 9–10). The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976); U.S. Const. amend. VIII. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." Id.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials acted with a sufficiently culpable state of mind.'

Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (quoting Strickler

v. Waters, 989 F.2d 1375, 1370 (4th Cir. 1993)). "These requirements spring from the text

of the amendment itself; absent intentionality, a condition imposed on an inmate cannot

properly be called 'punishment,' and absent severity, such punishment cannot be called

'cruel and unusual.'" Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson v.

Seiter, 501 U.S. 294, 298–300 (1991)). To establish a sufficiently culpable state of mind,

there must be evidence that the defendant disregarded a known excessive risk of harm to

the inmate's health or safety. See Wilson, 501 U.S. at 297–99.

Hunter alleges that he suffered a dry cough and "permanent damage" to his throat

as a result of being pepper sprayed during the period in which he was without water. (Am.

Compl. at 13). The injury he alleges occurred when a chemical agent was deployed against

a different inmate, not Hunter. (Id.). Further, the harm he alleges that he suffered is not

linked to the absence of water in his cell, but to the use of pepper spray on the tier. (Id.).

Thus, the "conditions" that caused him harm were not intentional and cannot be

characterized as punishment. Further, Hunter fails to identify any other lasting injury that

he incurred as a result of having his water turned off in his cell. (See generally id.). The

interruption in water service was brief, and it was mitigated when Hunter was given ice.

(Id. at 10). As a result, the Court finds that Hunter's conditions of confinement claim must

be dismissed for failure to state a claim.

### 5.    Fourteenth Amendment

Finally, Hunter claims that Defendants violated his right to due process by denying

him a fair disciplinary hearing concerning his infraction, which resulted in a finding of

guilt and various sanctions. (Am. Compl. at 5, 10). The Court disagrees and will dismiss this claim.

Prisoners retain rights under the Due Process Clause, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full [array] of rights due [to] a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. See Williams v. Cartwright, No. PJM-13-427, 2013 WL 4551979, at *4 (D.Md. Aug. 27, 2013). These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. See Wolff, 418 U.S. at 564–66, 592.

There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 504–05 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. See Baxter, 425 U.S. at 322 n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985); Tyler v. Hooks, 945 F.3d 159, 171 (4th Cir.

2019) ("[T]he 'some evidence' standard is extremely broad in scope and presents a very low burden for prison officials to meet.").

However, any infringement of Hunter's due process rights would be cured through a successful administrative appeal, because "[t]here is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." Morissette v. Peters, 45 F.3d 1119, 1122 (7th Cir. 1995) see also Harper v. Lee, 938 F.2d 104, 105 (8th Cir. 1991) (finding no due process violation when the wrongful failure to permit a prisoner to offer log book evidence at a disciplinary hearing was reversed on appeal and corrected at a second disciplinary hearing, because the "administrative appeal process is part of the due process protection afforded prisoners"); Young v. Hoffman, 970 F.2d 1154, 1156 (2d Cir. 1992) (holding that the prisoner-plaintiff "was ultimately afforded his due process protections" because the administrative reversal of his disciplinary proceedings "cured any procedural defect that may have occurred").

Here, the Court does not find any infringement of due process. In his Opposition, Hunter states that his oils were tested by the Maryland State Police, and in November 2023, "DPSCS determined that the oils seized from Plaintiff were not illicit in nature." (Opp'n at 8). He asserts that on October 3, 2025, the guilty findings were reversed and his credits restored. (Id. at 8–9; Oct. 3, 2025 Reversal and Vacatur Order at 1, ECF No. 30-7). As such, any alleged wrongdoing that resulted in a conviction was remedied through the administrative appellate process. Hunter was afforded the process prisoners are due in the context of a disciplinary infraction, and he was successful in overturning his conviction.

15

(2025 Reversal and Vacatur Order at 1). The Court, therefore, finds that no Fourteenth Amendment claim exists here.[6] Accordingly, Hunter's claim will be dismissed.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (ECF No. 24) and dismiss the Amended Complaint. A separate Order follows.

Entered this 27th day of July, 2026.

_____/s/_____
George L. Russell, III
Chief United States District Judge

---

[6] Hunter also seeks immediate release from custody due to inconsistencies in decisions made by the Maryland Parole Commission. (Opp'n at 24–26). This is not an available remedy in a Section 1983 suit. See Brown-Bey v. Hooks, No. 3:18-CV-00083-FDW, 2018 WL 10609714, at *1, n.2 (W.D.N.C. Apr. 27, 2018). If Hunter believes his incarceration is unconstitutional, he may seek relief through a petition for writ of habeas corpus. Id.